## PAYNE v. BENSLEY.

Where a negotiable promissory note, not yet due, is taken *bona fide,* as collateral security for a pre-existing debt, it is not subject to any defence existing at the date of the assignment between the original parties.

A pledge of personal property is a "mortgage," within the meaning of the Attachment Act; the word, being there used in its most general signification, meaning "security."

APPEAL from the District Court of the Twelfth Judicial District, County of San Francisco.

Theodore Payne, as plaintiff, brought this action iu the Court below, against John Bensley, on his promissory note, made payable to one Atwill, and by Atwill assigned to him. The defendant answered, admitting the execution and delivery of the note, but averred that the same was part of the purchase-money of a certain lot sold by Atwill to defendant, and that by a contract of even date with the note, Atwill agreed with the defendant, in case that the title of said lot failed, and defendant was evicted therefrom by due process of law, that then said note should be canceled. Defendant further averred that upon the maturity of said note, and prior to its assignment to plaintiff, that the title to said lot had wholly failed, and that he had been duly ousted from the possession thereof, by title paramount. The case was tried by the Court below, without the intervention of a jury, at which trial it appeared that the contract set forth by defendant in his answer, had been made between Atwill and Bensley; that the title of Bensley had been defeated, and that he had been evicted from the premises by title paramount; that before the promissory note became due, the same was duly endorsed to plaintiff, who received the same in good faith, without any notice of the contract between Atwill and defendant.

That the said promissory note was transferred by the said Atwill to the plaintiff as a collateral security, to be applied when collected by the plaintiff, towards the payment of a pre-existing debt of about the sum of five thousand dollars, owing from said Atwill to said plaintiff, for which plaintiff held Atwill's promissory note, and that said debt, owing from Atwill to the plaintiff, was not extinguished by such transfer of the defendant's promissory note. Nor was any express agreement made between plaintiff and Atwill to extend the time of payment, and that

there was no new consideration, whatsoever, for said transfer, unless the above facts constitute a new consideration.

On these facts the Court below rendered judgment for plaintiff, from which defendant appealed.

*B. S. Brooks and William Duer* for Appellant.

The only point presented to the Court for adjudication in this case, is this :

Whether a promissory note without consideration, and upon which the payee could not maintain an action against the maker, is divested of its equities in the hands of the endorsee who receives it as a collateral security for an old debt merely, and parts with no value or new consideration when he receives it and makes no new contract on the faith of it.

I had supposed the question settled beyond controversy, that such an endorsee was not a *bona fide* holder for value within the meaning of the term, as it is used in this connection, in the numerous reported cases. I was aware that Judge Story, in the case of Swift *v.* Tyson, (16 Peters, 1,) had expressed an opinion to the contrary, which was *obiter dictum*, and Judge Catron rebuked it at the time as deciding a matter entirely outside of the case, and which had not been mentioned in the argument. But as this opinion had been expressly dissented from by every tribunal which had subsequently examined it, I supposed that the steady current of authority, which this opinion had for a moment disturbed, was permanently restored to its old channel. But the learned Judge of the Twelfth Judicial District, who tried this case, having expressed himself otherwise, and so decided for the plaintiff in this suit, I beg the favor of a patient hearing from the Court while I re-examine the question.

The note sued upon in this case was made by John Bensley in favor of Joseph F. Atwill, for four thousand dollars, with interest, payable in three years, and was given in part payment for land purchased at the same time. By a cotemporaneous contract, in writing, this note was to be void in case Bensley, prior to the maturity of said note, should be ejected from the land by due process of law under superior title. He was so ejected; and it is not disputed that Atwill could not sue upon the note. Atwill being insolvent and indebted to Payne in five thousand dollars, endorsed the note over to Payne, who received it in good faith and without notice, as collateral security for said pre-existing debt. The time of payment was not extended; there was no new consideration given by plaintiff for the note, and the original debt was not extinguished.

As long ago as 3 W. and M., A. D., 1692, Clark *v.* Mundall, 1 Salk., 124, S. C.; 3 Salk., 68, it was decided that a bill of exchange (or note) received, is not payment of a precedent debt unless it is so expressly agreed. This has been the uniform rule

18

since that time in England and in the United States, with the exception of some of the New England States, where a note or bill is payment and extinguishes the precedent debt. This is a material distinction, controlling the decisions in some cases.

Before the statute of 3 and 4 Ann, (c. 9, 1705) an action would not lie upon a promissory note or inland bill. Clark *v.* Martin, 1 Salk, 129, S. C.; 2 Ld. Ray., 757; Pollett *v.* Pearson, 1 Salk., 129; 2 Ld. Ray., 759; and in Hodges *v.* Steuart, 1 Salk., 124; 3 W. and M., 1692, it was held that an endorsee could not maintain an action against the drawer of a bill payable to bearer. S. P. Nicholson *v.* Smith, 3 Salk., 67, S. C.; 1 Ld. Ray., 180; Jordan *v.* Barloe, 3 Salk., 67.

A. D. 1690 : in Hinton's case, 2 Shower, 235, case on a bill of exchange against the drawer, (bill not being paid and payable to J. S., or the bearer,) the plaintiff brings the action as bearer, and upon evidence, it was ruled by Lord Pemberton, that he must entitle himself to it, on a valuable consideration; for if he comes to the bearer by casualty or knavery, he shall not have the benefit of it.

A. D. 1699 : Anonymous, 10 Wil., 3; 1 Salk., 126, S. C.; 3 Salk., 71; 1 Ld. Ray., 738. A bank-bill payable to A or bearer, being given to A and lost, was found by a stranger who transferred it to C for a valuable consideration; C took it to the bank and got a new bill in his own name; *et per* Holt, C. J., A may have trover against the stranger who found the bill, for he had no title,though the payment to him would have indemnified the bank; but A cannot maintain trover against C by reason of the course of trade, which creates a property in the assignee or bearer.

A. D. 1764 : Grant *v.* Vaughan, 3 Burr, 1716, S. C.; 1 Black. Rep., 485. Defendant drew his check upon his banker, Sir Charles Asgill, payable to ship Fortune or bearer, and gave it to W. Becknell, who lost it, and the finder, or one who had possession four days after it was due, came to the shop of the plaintiff, bought five pounds worth of tea of him, and gave him this check in payment, desiring to have the change out of it. Plaintiff went out and made inquiry as to the drawer, ascertained that it was good, and the signature genuine, and took it in payment, giving the change. Upon presenting the check at the bank, payment was refused, it having been stopped by the drawer; and this action was brought in *assumpsit*, to recover the amount, and the plaintiff had judgment. Here was value parted with at the time, on the faith of the check.

1765 : Pillars & Rose *v.* Van Mierop & Hopkins, 3 Doug., 1463, was a question of parol acceptance of a bill of exchange, and is not in point. But it is one of the cases cited by Story, and I shall examine it fully in another part of my argument.

1776: De Silva *v.* Fuller, Sitt. Lond. Easter MSS., cited E. N

P., 40, was an action of trover for a check drawn by one Cox on the defendants, who were bankers, payable to No. 437 or bearer, on demand. It was drawn the seventeenth of June, but dated the eighteenth. Plaintiff received it on the seventeenth, lost it the same day, and on the same day it was presented by the finder to the defendants, who paid it. It was proved to be contrary to the usual course of business to pay checks before the day on which they were dated, and on that ground the plaintiff had a verdict.

1780: Russell v. Langstaff, Dong., 514, blanks for notes were endorsed by the defendants, afterwards filled up in divers amounts and signed by A, and discounted by the plaintiff for him. Plaintiff recovered judgment. Here was a good consideration, but the case did not turn upon that.

1781: Peacock v. Rhodes, Dong., 613, the action was upon an inland bill of exchange with a blank endorsement. It was drawn to the order of William Ingraham, by him endorsed in blank, and lost. The plaintiff took it from a man named Brown, in payment of goods sold to him at the time, giving him the change in cash and small bills. The only question argued in this case was, whether the rule applied to a bill drawn to order and endorsed in blank, whether it stood upon the same footing as a note payable to bearer; and it was here first decided that it did. But upon the question of *mala fides*, Lord Mansfield considered that the circumstances that the buyer and also the drawer were strangers to the plaintiff, and that he took the bill of goods on which he had a profit, were grounds of suspicion, and so put it to the jury.

A. D. 1811; Rees v. Marquis of Headport, 2 Camp., N. P., 374, was an action on a bill of exchange against the acceptor. The bill was shown to be without consideration, and this was held to put the holder upon proof that he parted with value on the faith of it; and he not making such proof was nonsuited. And it was held, in the case of Duncan v. Scott, 1 Camp. N. P. Rep., 100, (A. D. 1807,) that where the consideration of the bill was impeached, the plaintiff must prove that he paid value for it, though he took it in good faith. (Per Lord Ellenborough.)

A. D. 1812: Carstairs v. Bates. Action by plaintiffs, assignees of a bankrupt banker, to recover from Bates, the acceptor of a bill of exchange drawn by one Allport, and discounted for him by the bankers, and proceeds carried to his account. The assignees recovered, though there was no balance due from Allport to the banker.

A. D. 1814: In the case of Bosanquet et al. v. Dudman, 1 Starkie, 1, Lord Ellenborough held at *nisi prius* that where a banker's acceptance exceeded the cash balance in his hands, he holds collateral securities for value.

1829: The case of De la Chaumette v. The Bank of England,

9 Barnwall & Creswell, 205, appears to me to be directly in point, and decisive of the question, so far as the law in England is concerned.   It is in many respects similar to the case of Solomans *v.* The Bank of England, before cited.   In this case, a Bank of England note, which had been stolen in England in February, 1826, was remitted in May, 1827, by a foreign merchant to his correspondent in this country, to whom he was indebted in a sum exceeding the amount of the note.   The latter demanded payment; the Bank of England refused to pay, on the ground that the note had been stolen.   At the time when the correspondent was informed of this, he had not made the foreign merchant any advance on the credit of the note.

Here, the Court will perceive, is precisely the distinction.   De la Chaumette was the holder for a precedent debt, exceeding the amount of the note, but he had not made any advance on the credit of the note.   And it was held,

First, That in trover for said note, the plaintiff must be considered the agent of the foreign merchant, and that he could therefore recover on his title only.

Second, That in such action, it having been proved that the note had been stolen, it was incumbent on the plaintiff to show that the foreign merchant had given full value for it.

And note that in this case the jury found specially that plaintiff's correspondent received the note in the regular course of business.   Scarlett & Platt, arguing for plaintiff, put his claim on the ground of the debt due from Odier & Co., to him; and it was replied, "That although they were indebted to him at the time when the note was remitted, he did not advance to them any money on the faith of this note," and this argument prevailed.

And Tenterden, C. J., says: "It appeared that at the time when the note was remitted to the plaintiff, the balance as between him and Odier & Co., was £1,700 in favor of the plaintiff. But he did not, in consequence of having received the note, make any further credit to Odier & Co., than he would have done if the note had not been transmitted.   We think, upon the whole, there should be a new trial, to give the plaintiff an opportunity of proving that Odier & Co. gave full value for the note."

As early as 1802, Conny *v.* Warren, 3 Johns., case 260, the Court of Errors laid down the doctrine, that when the consideration of a note was impeached, the onus was on the plaintiff, to prove a consideration paid.   In Baker et al. *v.* Arnold, 3 N. Y. Term Rep., the litigation was upon the question of consideration, both of the note and assignment.   The holder recovered a verdict.   The only evidence impeaching either, was the testimony of one witness, who was discredited.   He swore that the note was originally without consideration, or fraudulent, and the consideration of the endorsement was a pre-existing debt.   But the jury disbelieved him, and all the judges agreed that they had a

right to disbelieve him, and therefore refused a new trial. In Warren v. Lynch, 5 Johns. Rep., 240, there was no question of this kind. The note was given for a good consideration, and passed away for a good consideration, incurred on the faith of it as it appeared. There was ground of suspicion that it was made originally from A to C, for a debt A owed B, with the intent of avoiding the creditors of B; but it was held that the plaintiff, an innocent endorsee, could recover. In that case, the maker had no equities, though B's creditors might have had; but they were not parties to the controversy. This is the case cited by Story, Russell v. Ball et al., 1806; the only question discussed, was, "whether the defendants could have been permitted to impeach the note, by showing a want of consideration, or that it was fraudulently obtained; without showing that the endorsee was not a fair and *bona fide* holder, for a valuable consideration; and it was held that he could not; a mere question of *onus probandi.*"

The cases following, Coddington v. Bay, in New York; Bristol v. Sprague, 8 Wend., 423; Rosa v. Brotherton, 10 Wend., 85; The Ontario Bank v. Worthington, 12 Wend., 593; Payne v. Cutler, 13 Wend., 605, are admitted to be in point.

In the Supreme Court of Maine, the subject was also learnedly re-examined, in the case of Bramhull v. Brackett, 31 Maine, 205, explaining Howes v. Smith, 16 Maine, (4 Shep.,) 179, and Norton v. Waite, 2 App. Rep., 175, which were supposed to bear against it. The Court reviews the case of Swift v. Tyson, and disapproves of, and approves of the rule in Stacker v. McDonald, and says that it is so decided in most of the other States.

In addition to the authorities which I have cited, in the course of the argument, I would also refer the Court to the following: Jenners v. Bean, 10 N. H. Rep., 266; Williams v. Settle, 11 N. H. Rep., 16; Doe v. Burnham, 11 Foster N. H. Rep., 483; Petue v. Clark, 11 S. & R., 377; 2 Miles, 203; Ib., 362; South v. Babcock, 2 W. & M., 288; Ellicott v. Martin Lowe & Co., 6 Maryland Rep. 515; 1 Maryland C. W. Dec., 445; 9 Gil., 137; Sargeant v. Sargeant, 18 Vermont, 377; Sanford v. Norton, 14 Verm., 233; Keyes et al. v. Wood et al., 21 Vermont, 336; Lapice v. Clifton, 17 Louisiana, 98; Boyd v. McVoor, 11 Ala., 822; Middletown Bank v. Jerome, 18 Connecticut, 449.

*Janes, Barber & Boyd, and R. F. Morrison,* for Respondent.

Payne is a *bona fide* holder of the note, for a valuable consideration, although he took the same in payment, or merely as collateral security for a pre-existing debt. Swift v. Tyson, 16 Peters, 19 to 22; Brush v. Scribner, 11 Conn., 388; Riley et al. v. Anderson, 2 McL., 589; Gibson et al. v. Conner, 3 Kelly, 47; Allaise v. Hartshorne, 1 Zabriske, 663; Story on Promissory Notes, 195; Carlisle v. Wishart, 11 Ohio, 172; 8 Metcalf, 40; 3

Cushing, 162; Story on Bills, § 292; 3 Kent's Comm., 80; Byles on Bills, 97, (note;) Pugh v. Durfee, Blackford, 412.

The plaintiff lost his remedy by attachment, in consequence of the assignment to him of the note. Taking the note of a third person as collateral security, was in effect a mortgage.

"Both in law and equity, the mortgagee has only a chattel interest; in common sense, he has only a pledge." 1 Hilliard on Mortgage, 163.

. The word mortgage is derived from two French words, "mort," dead—and "gage," pledge, and means a dead pledge. Webster's Dic.

Mortgage is defined as a "pledge of goods and chattels by a debtor to his creditor, as security for the debt. Kent's Comm.; Webster's Dic.

The surrender of a legal right, is a valuable consideration in law. 11 Serg. & Rawle, 388; 1 Parson's on Contracts, 369; and authorities there referred to.

BURNETT, J., delivered the opinion of the Court—TERRY, C. J., concurring.

The only question in this case is, whether a negotiable promissary note not yet due, and *bona fide* taken as collateral security for a pre-existing debt, is subject, in the hands of the endorsee, to any defence existing at the date of the assignment, between the original parties.

. The authorities on this point have been conflicting; and the research and industry of counsel have brought before us the leading decisions on both sides of this question. It will not be necessary to attempt a review of the numerous authorities to which we have been referred. The greater number of decisions would seem to support the position taken by the counsel of defendant, while the more recent decisions sustain that of the plaintiff, without giving any decided opinion upon the point. I must say, with Chancellor Kent, alluding to the decision in Swift v. Tyson, 16 Peters, 1, that "I am inclined to concur in that decision, as the plainer and better doctrine." 3 Kent, 80; note A. But all the authorities agree in one position, that if there be any new consideration for the assignment, then the assignee is a holder for value, and the maker is precluded from resorting to defences that he might make against the payee, were the suit brought by him.

It is insisted by the counsel for the plaintiff, that before he took the note of Bensley as collateral security for the pre-existing debt, Payne had a remedy, by attachment, against his debtor, but that by taking the collateral security the plaintiff lost that remedy, and that the loss of this remedy constituted a new consideration moving from Payne to his debtor, the assignee of the note.

Payne v. Bensley.

By the provisions of the one hundred and twentieth section of the Practice Act, the remedy, by attachment, does not exist where the contract is " secured by a mortgage upon real or personal property."

It is conceived that the force of this point made by the counsel of plaintiff, will depend upon the construction of the phrase "mortgage upon personal property," as used in our statutes.

In strictness, the assignment of this note to Payne was not a mortgage, but a mere pledge, of the note. Dewey v. Bowman, July, 1857.

Under the old decisions, the legal ownership of mortgaged real estate was vested in the mortgagee. 4 Kent, 138. But by repeated decisions of this Court, it has been settled that under our statute, a mortgage is a mere security for the debt, and the legal title remains in the mortgagor until foreclosure and sale. 2 Cal. Rep., 387, 492 ; 5 Cal. Rep., 334 ; Guy and Angier v. Ide, January, 1856 ; Practice Act, §§ 260, 266.

If, then, the word *mortgage*, when applied to real property, only means a *security* for the debt, should not the same word in the same sentence, and in the same connection, mean the same thing when applied to personal property ? The object of the attachment is to obtain *security* for the judgment ; and when the party already has that security, the statute will not allow him to use this process to obtain that which he already possesses. Whether the creditor has a mortgage upon real or a pledge of personal property, he has *security* for his debt. In both cases, he has substantially the same interest in the property. The mortgage, in the one case, and the pledge in the other, must be essentially the same, and intended to accomplish the same end.

It would then seem clear that the intention of the Legislature was to use the word mortgage, as applicable to personal property, in its widest extent. If we give it a strict construction, and say that the word, as used in the statute, can only apply in a strict sense, then the term can have no rational meaning, in the connection in which it is found. " A mortgage of personal property passes the present legal title in the property itself to the mortgagee, subject to be re-vested in the mortgagor, his heirs or assigns, upon the performance, by him, or them, of an *express condition subsequent.*" Dewey v. Bowman. The title of the property being already in the mortgagee, remains in him if the condition subsequent be not performed. The mortgagee has no occasion to sue, as the mortgagor had no positive obligation to perform. There is nothing that the mortgagee has to enforce by suit. Now, the statute clearly contemplated such a mortgage upon real and personal estate, as constituted a *security* for a contract that must be enforced by a sale of the property, either with or without suit. But a mortgage of personal property cannot constitute a *security* for debt any more than could a conditional

sale.  The difference between a mortgage and a conditional sale of personal property is substantially this : In the first, the property passes at once, subject to be re-passed upon the performance of an express condition subsequent, while in the second, no present title passes to the purchaser, but rests upon the performance of the condition subsequent.

This could not have been the intention of the Legislature. And if we hold that the term must be taken in its strict sense, when used in the one hundred and twentieth section of the Practice Act, then a creditor can still attach, though holding a pledge of personal property at the same time.

It is no answer to this view of the case to say that the creditor is not compelled to hold the collateral security, but may surrender it at any time, and attach.   It may admit of great doubt whether he could surrender the security and attach without the consent of his debtor.   The latter has acquired some rights, by giving the collateral security, as well as the former.   This freedom from the oppressive remedy by attachment, may have constituted the principal motive on the part of the debtor, for giving collateral security for a pre-existing debt.   The relation of the parties to each other, is not the same after this collateral security is given, as it was before.

The District Court seems to have taken the correct view of the law applicable to the case, and its decision is therefore affirmed.