## ROBINSON *v.* SMITH *et als.*

COMMERCIAL paper, transferred before maturity, as collateral security for a pre-existing debt, is not subject to the defenses of payor against payee.

*Payne* v. *Bensley*, (8 Cal. 260,) affirmed.

Because a mortgage, given to secure the payment of several notes falling due at different times, provides for payment at times, or in modes, different from the notes, is no objection to suit on the notes at maturity. The mortgage is not a part of the contract of indebtedness.

Where, in a mortgage to secure the purchase money of land, for which notes were given falling due at different times, the condition was, "provided, that previous to the dates of said payments, it shall have been decided by competent authority, that the title to said land is fully vested in the party of the second part, and the party of the first part is given full and peaceable possession," the holder of one of the notes transferred before maturity, may sue on it at maturity, although the title to the land has not been settled, and peaceable possession not given.

The fact that the purchaser of the note saw the mortgage and note, was no notice to him of any valid defense to the note.

APPEAL from the Sixth District.

Plaintiff had judgment below, defendants appeal.

*Latham & Sunderland,* and *Edwards,* for Appellant.

When a transfer of a note is made merely for the purpose of collateral security, there is no valid consideration, and the holder is not entitled to protection against the equities. In other words, if Robinson received the note sued upon, not in payment of his pre-existing debt, then, whatever defense Smith and others could make to an action brought by Sutter, will be good as to the suit instituted by Robinson, the indorsee. (Parsons on Cont. Vol. 1, p. 216; *Bay* v. *Coddington,* 5 Johns. Ch. 54; *Payne* v. *Cutler,* 13 Wend. 605; *Stalker* v. *McDonald,* 6 Hill, 93; *Scott* v. *Betts,* U. S. Dig. Vol. 17, p. 481; *Clark* v. *Ely,* 2 Sand. Ch. 166; *Mickles* v. *Colins,* 4 Barb. Sup. Conn.; *Fenly* v. *Pritchard,* 2 Sand. Sup. Conn. 151; *Bertrand* v. *Barkman,* 8 Eng. Ark. 150; *Jenness* v. *Bean,* 10 N. H. 266; *Prentice* v. *Zane,* 2 Gratt. 262; *Bramhall* v. *Becket,* 31 Me.; *Sargeant* v. *Sargeant,* 18 Vt. 371.)

*Winans,* for Respondents.

I. The mortgage being but an incident to the debt created by the note, and being inconsistent, by reason of its conditions, with the absolute obligation thereof, and not specifying that the note should be subject to its conditions, has no control whatever

Robinson *v.* Smith.

over it, and does not in any way affect or qualify the liability arising from it.

1. The mortgage was subordinate to the note and could not control its legal effect in the absence of an express provision to that effect.

The note on which this action is founded was an absolute unconditional promise to pay a certain sum of money at a given time, entirely negotiable in its character, and negotiated to plaintiff before its maturity as collateral security for a pre-existing debt. For greater certainty, we subjoin a copy:

" $3,000.

On the 1st day of October, A. D. 1851, we or either of us, promise to pay to the order of John A. Sutter, three thousand dollars value received. Sac. City, May 27, 1850.

|  | MARCUS A. BAKER, |
|---|---|
| (Signed) | ANTHONY P. SMITH, |
|  | JULIUS S. BARBER." |

"Indorsed" John A. Sutter, by his Attorney, John S. Fowler.

It is contended by defendants, that the conditions of the mortgage also applied to the notes, including that here sued on.

Defendants, in order to support this view, must make the note subsidiary to the mortgage, and thus reverse the principle of equity. The terms of the note are entirely inconsistent with those of the mortgage. The former is payable absolutely upon a day certain; the latter is enforceable only upon the happening of certain contingencies therein named.

Undoubtedly, although the note is an express, unconditional contract, for the payment of money, yet, if the mortgage had specifically set forth, that it was only payable upon the happening of the contingencies by which it is controlled, then the note, notwithstanding its own terms were directly contradicted thereby, would be subject to these contingencies; but in the present case, this doctrine, even if conceded, does not alter the effect of the note, for the conditions named in the mortgage are only made applicable to the mortgage itself, not to the note. Appellants then are reduced to the necessity of contending that the mortgage contradicts the note and radically changes its effect not in express terms, but by implication. It so happens that

even taking the mortgage and note together, there is no actual inconsistency between them, since the conditions of the mortgage are not made applicable to the notes; but if there were such inconsistency, the notes would control the mortgage, rather than be controlled by it, and the mortgage would be construed in conformity with, rather than in contradiction to, the obligation they created, the doctrine being that, where there is a variance between the mortgage and the personal security, the mortgage must succumb. (Hilliard on Mortgages, Vol. 1 p. 193; *New Hampshire* v. *Willard*, 10 N. H. 210; *Ord* v. *McKee*, 5 Cal. 516; *Dillon* v. *Byrne*, 5 Id. 445; *Sherwood* v. *Dunbar*, 6 Id. 53; *Bourne* v. *Littlefield*, 29 Me. 302; *Sanger* v. *Hammett*, 3 Shepley, 40; *Hatch* v. *White*, 2 Gallison, 154; *Clarke* v. *Figes*, 2 Starkie, 834; *Jackson* v. *Lackett*, 7 Wend. 102; *Gardiner* v. *Corsan*, 15 Mass. 503; Platt on Covenants, 79 *et seq.*; *Pordage* v. *Cole*, 1 Saund. 320 b; *Terry* v. *Duntze*, 2 H. Blac. 389; *Gibson* v. *Newman*, 1 How. Miss. 349; *Moggidge* v. *Jones*, 14 East, 486; *Martin* ads. *Bobo*, 1 Speers' L. C. 27; Dart's Vendors and Purchasers of Real Estate, 450.)

2. The note, although given as collateral security for a pre-existing debt, was negotiated to plaintiff in the regular course of business before its maturity, and is therefore not subject to any equities existing against the payee of which the plaintiff had no notice. (Story on Promissory Notes, Secs. 115, 195, Note 4; *Swift* v. *Tyson*, 16 Pet. 1; *Bay* v. *Coddington*, 5 Johns. Ch. 54; Kent's Com. 81, Note 6; *Sargeant* v. *Sargeant*, 18 Ver. 371; *Swift* v. *Tyson*, 16 Pet. 19; *Pugh* v. *Durfey*, 1 Blatchford C. C. 412; *Stoddard* v. *Kimball*, 6 Cushing, 469; *Williams* v. *Cheney*, 3 Gray, 215; *Gwynn* v. *Lee*, 9 Gill, 137; *Gibson* v. *Conner*, 3 Kelly, 47; *Grenaux* v. *Wheeler*, 6 Texas, 573; *Allaise* v. *Hartshorne*, 1 Zabriskie, 63; *Carlisle* v. *Wishart*, 11 Ohio, 191, 192; *Payne* v. *Bensley*, 8 Cal. 260.)

In the case last cited, which Appellants omit to quote, the principle for which we are contending is distinctly decided in our favor, and cannot now be determined otherwise without overruling that case.

3. Plaintiff had, and could have, no notice at the time of taking the note, of the *partial* failure of consideration claimed to have arisen out of the recovery in the Rippstein suit.

We do not deny, although the point is decided otherwise by some of the cases, that if plaintiff took the note even before maturity, with express notice of existing equities, which would have defeated its enforcement in the hands of Sutter, he would have been concluded thereby; but such was not the case. The evidence shows that all the notice plaintiff had was what he gathered from the reading of the mortgage. This could only have shown him, or put him upon inquiry to ascertain either, *first*, that at the time of his taking the note, Sutter's title to the premises had not been decided by the competent authority, or *second*, that defendants had not then been put into possession of the premises; and such notice could only have existed so as to charge plaintiff, in case the note was subordinate to the mortgage and controlled thereby.

BALDWIN, J. delivered the opinion of the Court—COPE, J. concurring.

This case has been argued very fully and learnedly. Several interesting questions are discussed, which we do not consider, in the view we have taken of the case, as necessary to a decision.

J. A. Sutter owed Robinson a considerable sum of money, and gave Robinson an order on one Fowler, Sutter's agent, to turn out to him, Robinson, security for the debt, in the shape of such promissory notes belonging to Sutter, in Fowler's hands—there being a large number—as Robinson might select. Fowler assigned to Robinson the note sued on, being a note for three thousand dollars, dated May 27, 1850, due 1st October, 1851. This note was given to secure the payment of part of the purchase money of certain lands sold, about this time, by Sutter to the makers, for ten thousand six hundred dollars. A deed for the land, with covenants of warranty, was executed by Sutter to these makers, and they executed a mortgage to Sutter to secure the purchase money. The mortgage contains this provision:

"This conveyance is intended as a mortgage to secure the payment of the sum of ten thousand six hundred dollars, in four several notes, bearing even dates with these presents, in manner following, to wit: One thousand dollars on the 1st October, 1850; one thousand on the 1st of February, 1851; three thousand on

the 1st of October, 1851; five thousand six hundred on the 1st February, 1852. Provided, that previous to the dates of said payments, it shall have been decided by competent authority that the title to the said land is fully vested in the party of the second part, and the party of the first part are given full and peaceable possession."

The assignment of the note was before its maturity.

When Robinson took this note, he took it as collateral security for a pre-existing debt, and saw, and had notice of, this mortgage. The defense set up is, that it never has been declared by competent authority that Sutter had title; and, further, that the defendants were not put in peaceable possession. On the contrary, they assert that they were evicted by legal proceedings from a portion of this land.

This raises two questions: 1. Is commercial paper, indorsed before maturity, as collateral security for a pre-existing debt, subject to defenses of payor against payee?

2. Do these facts show such defense by the makers against the payee, and did the plaintiff take this note with notice of such defense?

1. In *Payne* v. *Bensley*, (8 Cal. 260,) this first question was elaborately discussed. All the authorities seem to be collected. There is unquestionably very great conflict in the cases. The Supreme Court of the United States, in *Swift* v. *Tyson*, 16 Pet. 1; Ch. Kent, 3 Kent's Com. 81, Note b.; Mr. Justice Story on Promissory Notes, 215, Note 1; and the more modern decisions, especially in new States, not trammeled or foreclosed by previous adjudications, support the doctrine declared in *Payne* v. *Bensley*. In such a conflict as to the true rule, we do not feel disposed to overturn a decision made by this Court, upon full argument, even if the reason were clearer than it is against the proposition decided.* In truth, it may be well said that the reason of the rule, as we hold it, is stronger in California than elsewhere, since the uncertain condition of property and the fluctuations in titles and pecuniary affairs, make collateral security here more valuable than elsewhere, and the loss of it more frequently equivalent to the loss of the debt. A man receiving such security, and suspending proceedings to collect his debt, would very

* See *Naglee et al.* v. *Lyman,* (*post.*)

often find that he had lost the debt by taking the security, if defenses could be set up against the paper. In older communities, where a different rule obtains, it has been argued with more force than it could be here, that merely from receiving an additional security for a debt and surrendering nothing, the creditor cannot be considered a *bona fide* purchaser for value, since he neither gives nor loses anything in the transaction. The *general* working of the rule, as we have held it here, would be beneficial; and this is as much as can be said of any proposition of commercial law, and it has, besides, the great advantage attributed to it by Chancellor Kent, of being the "plainer rule."

2. The second inquiry involves the question whether this matter is a good defense. The note sued on was one of several, made of even date, and falling due at different periods, from five months after date to nearly two years. The mortgage provides in the same language for the payment of all. The notes were drawn in the usual form of unconditional obligations to pay money. A deed was executed guarantying title.

The argument of Appellants is this : that this mortgage and these notes, having been contemporaneously executed, and all relating to, and constituting, one entire transaction, are to be read together, and if, from the whole transaction, it appears that the notes were only to be paid in a given event, they cannot be enforced except in that event. The rule invoked is unquestionably correct. But its application to the facts may not be admitted so readily. It is not true that the notes and the mortgage are, for all purposes, one transaction or one contract. Indeed, for many purposes, they are different contracts. The payee may sue on his note without proceeding to enforce his mortgage. He may never enforce it, or have occasion to enforce it. The contract of indebtedness is one thing; the contract by which that indebtedness is secured is another thing. The terms of these contracts may be widely different. The note may be absolutely due, by a given day, the security may provide for its payment by a far distant day, and this security may be qualified or conditional, partial or complete, contingent or absolute. In other words, the contract by which security is afforded may be wholly different; indeed, often is wholly different from the terms of the contract of indebtedness; if in the form of a mort-

gage, the mortgage is never legally enforceable on the day the debt is due, but the note carries with it the obligation of prompt payment on that day.

In this case there is no implication that because the mortgage could not be enforced until after the decision of the United States' authorities upon the Sutter title, that the notes should not be collected before. The reason may have been this obvious one, that the mortgagors did not wish the land sold when there was a cloud hanging over the title, as it might be sacrificed.

But why take the deed with warranty if no money was to be paid until possession and final confirmation of title? And what sense is there in a bargain which surrendered possession of part, if not the whole, of the land, without getting any money until the title could be assured, and none if it turned out bad, and, besides losing the possession, the grantor be responsible on his warranty? And if it was expected that no money was to be paid until final confirmation, why draw the notes payable at different dates? Why not make them all payable on the happening of the event? Especially, why divide the payments so as to make a large portion, if not all, due before the reasonable period elapsed which must have been considered necessary for final confirmation? But it is not necessary to labor these points, for, as we have intimated, there is no presumption from the fact that a mortgage or other security provides for payment at a different time or mode from that in the contract of indebtedness it secures, that these last stipulations were meant to qualify the first. In other words, the mortgage is not a part of the contract of indebtedness.

This being our view of the matter, the fact that Robinson saw this mortgage and the note, was no notice to him of any defense to the note. It is not shown that he had any other notice. This makes it unnecessary to consider any other questions made in the record.

The judgment of the District Court is affirmed.

# CASES DETERMINED