[Civ. No. 5967.   Fourth Dist.   Mar. 16, 1959.]

BERT J. SCHUT et al., Respondents, v. B. E. DOYLE et al., Defendants; HELEN ESTELLE FRY et al., Appellants.

Ferguson & Judge for Appellants.

McCabe & Schumacher and Raymond F. Vincent for Respondents.

MUSSELL, J.—This is an action to quiet title in which plaintiffs seek to establish the priority of their rights under a contract which they entered into with the defendants B. E. Doyle and Mollie A. Doyle for the purchase of Lots 7 and 8, Tract 1756, in Buena Park, Orange County.

There is no dispute as to the material facts, which are set forth in the pretrial conference order.

On January 22, 1953, Jennie E. Page sold and conveyed Tract 1756 to the Doyles without having received payment in full therefor and also without reserving any specific security or lien on said property by way of a deed of trust, or otherwise. After January 22, 1953, the Doyles subdivided the property, sold some of the lots and constructed houses on others. On October 8, 1954, the Doyles were indebted to the defendant Buena Park Lumber Company, a corporation, on an open book account in the amount of $9,215 for lumber and building materials sold and delivered to them, a portion of which was used in the construction of houses on said property. On October 8, 1954, the Doyles executed and delivered to the lumber company their promissory note for $9,215, secured by a deed of trust covering Lots 7, 8 and 9 of said tract. This deed of trust was recorded on the same day and the note and deed of trust were given to and received by the lumber company as full payment of the open book account. On May 23, 1957, the balance due on said note was $7,832.50, plus interest. At the time of the execution, delivery and recording of said deed of trust and at all times prior thereto the Buena Park Lumber Company and its agents and officers had no knowledge of any kind or nature, either actual or constructive, that Mrs. Page had any claim of any kind or nature against said Lots 7, 8 and 9 nor did the lumber company have any notice of any kind or nature, either actual or constructive, that the purchase price of said property had not been paid Mrs. Page by the Doyles.

On January 12, 1955, a judgment was rendered in favor of the Transcontinental Credit Service, a corporation, against the Doyles in the amount of $5,429.60, the abstract of which was recorded on January 17, 1955. This judgment had been paid down to a balance of $1,669.48 at the time of trial.

On February 11, 1955, Bert J. Schut and Winifred Schut (plaintiffs herein) entered into a written contract with the Doyles to purchase from them Lots 7 and 8 of said Tract 1756 for the sum of $4,800. This agreement consisted of

escrow instructions with the Orange County Title Company. The instructions were never recorded and the escrow was never closed. The Schuts paid to the Doyles as a part of the purchase price of said property the sum of $2,100, a portion of which was paid on February 11, 1955, and the remainder thereof prior to May 1, 1955. At no time prior to May 1, 1955, did the Schuts have any knowledge of any kind or nature, either actual or constructive, that Mrs. Page had any claim of any kind or nature against said Lots 7 and 8, nor did they have any notice of any kind or nature, either actual or constructive, that the purchase price of the property had not been paid to Mrs. Page by the Doyles.

On August 22, 1955, the executors of the estate of Jennie E. Page, deceased, obtained a judgment against the Doyles and it was decreed that the Pages have a vendor's lien upon said tract 1756 effective as of January 22, 1953. The judgment also provided that the vendor's lien was not binding upon purchasers of property within the tract who purchased in good faith, for value, and without notice, either actual or constructive, of the rights of the Pages.

On November 9, 1955, the Schuts brought the present action to quiet title to Lots 7 and 8 in said tract. The default of the Doyles was entered and on motion of plaintiffs the action was dismissed as to Orange County Title Company and Haskell A. Kelley.

The trial was had by the court without a jury and the principal issues presented and tried were (1) Whether the respondents Bert J. Schut and Winifred Schut and the Buena Park Lumber Company took with knowledge, actual or constructive, of appellants' vendor's lien; and (2) Whether the Buena Park Lumber Company is a purchaser or encumbrancer for value so as to be entitled to priority over the vendor's lien of the Pages.

The trial court rendered judgment that the Doyles have no interest or claim of any kind or nature in and to the property involved and "that the interests of the hereinafter mentioned parties in and to said Lots 7 and 8 of Tract Number 1756 and/or the proceeds therefrom, are in the following priorities:

First: The interest of defendant Buena Park Lumber Company;

Second: The interest of defendant Transcontinental Credit Service;

Third: The interest of the plaintiffs, Bert J. Schut and Winifred Schut;

Fourth: The interest of defendants Helen Estelle Fry and John Harold Page, as executors of the estate of Jennie Elizabeth Page, deceased.

Defendants, executors of the estate of Jennie E. Page, appeal from the judgment, claiming that as a matter of law the vendor's lien of Mrs. Page has priority over the interests, claims and liens of the other parties to the action.

One who sells real property has a vendor's lien thereon, independent of possession, for so much of the price as remains unpaid and unsecured otherwise than by the personal obligation of the buyer (Civ. Code, § 3046), and the liens defined in sections 3046 and 3050 are valid against every one claiming under the debtor, except a purchaser or incumbrancer in good faith and for value. (Civ. Code, § 3048.)

In *Frey* v. *Clifford*, 44 Cal. 335, 342, it was held that a mortgagee, in a mortgage given for the security of a pre-existing debt, is to be regarded in this state as a purchaser for a valuable consideration. And in *Smitton* v. *Mc-Cullough*, 182 Cal. 530, 537 [189 P. 686], the court said:

"The law in this state on this question is well settled to the effect that not only does an antecedent indebtedness constitute a valuable consideration for a transfer in satisfaction and discharge of said indebtedness, but it is also a valuable consideration, within the protection of the equitable doctrine of *bona fide* purchase, for a transfer merely as security for a pre-existing debt. (2 Pomeroy's Equity Jurisprudence, 4th ed., § 749.) The earliest cases in this state held that an antecedent indebtedness was a valuable consideration to support the transfer of commercial paper as security and rendered the pledgee thereof free from equities between the original parties. (*Payne* v. *Bensley*, 8 Cal. 260 [68 Am.Dec. 318] ; *Robinson* v. *Smith*, 14 Cal. 94; *Naglee* v. *Lyman*, 14 Cal. 450; Jones' Pledges and Collateral Securities, 2d ed., § 128; Pomeroy's Equity Jurisprudence, 4th ed., §§ 480, 749.) While these cases dealt with a *bona fide* purchaser under the law-merchant, the reasoning there adopted for holding the antecedent debt a valuable consideration was not based upon the peculiar requirements of commerce and mercantile business, and, in *Frey* v. *Clifford*, 44 Cal. 335, 342, the general rule was definitely laid down, and has never since been receded from in this state, 'that a mortgagee, in a mortgage given for the security

of a pre-existing debt, is to be regarded in this state as a purchaser for a valuable consideration,' and a subsequent mortgage given in security for an antecedent debt was held to prevail over a prior unrecorded transfer.''

■ It was further held therein that the policy of the law is against upholding secret liens and charges to the injury of innocent subsequent purchasers and encumbrancers.

■ In the instant case the record shows that the Buena Park Lumber Company had no notice of the claimed vendor's lien. In taking the trust deed and promissory note as payment of a preexisting debt, the company parted with value and was a purchaser or encumbrancer for value, thus entitling it to priority over the vendor's lien claimed by the executors of the Page estate.

■ The trial court decreed that the interests of Transcontinental Credit Service, Inc., was entitled to priority over the Page vendor's lien. This we think was error. In *Finnell* v. *Finnell,* 156 Cal. 589, 594 [105 P. 740, 134 Am.St.Rep. 143], the court, in discussing the vendor's lien provided in sections 3046 and 3048 of the Civil Code, said:

"Whatever may be said against the policy of allowing such a secret lien, not evidenced by any writing or public record, our legislature has seen fit to look with favor upon it and to continue in force the old equity rules in regard thereto. As was said in *Fisher* v. *Shropshire,* 147 U.S. 133, 143 [13 S.Ct. 201, 37 L.Ed. 109]), the principle on which such a lien rests has been held to be that one who gets the estate of another ought not in conscience to be allowed to keep it without paying the consideration. Our law, recognizing this as a just principle, gives to every vendor, in the vendor's lien declared by section 3046, security for and a means of enforcing payment of the consideration, so far as it can do so without injury to the rights of *bona fide* purchasers or encumbrancers for value.''

In *Fulkerson* v. *Stiles,* 156 Cal. 703, 705 [105 P. 966, 26 L.R.A.N.S. 181], it was held that a judgment creditor has only a general lien upon the real property of the judgment defendant; that such a lien is an encumbrance, but the original judgment plaintiff is not ordinarily an encumbrancer for a valuable consideration; that the phrase ''encumbrancers in good faith and for a valuable consideration'' means persons who have taken or purchased a lien, or perhaps merely the means of obtaining one, and who have parted with something of value in consideration thereof; and that the payment of the

money, or the parting with something of value, is essential.

In 30A American Jurisprudence, Judgments, section 535, page 548, it is said:

"The general rule is that the equitable lien of a vendor for the unpaid purchase money for land sold and conveyed is paramount to liens of judgments recovered against the vendee. Sometimes this rule is applied where the judgment lien is perfected by a judgment creditor having notice of the existence of the vendor's lien, but there are also cases in which the vendor's lien is given preference even though the creditors were without notice thereof. Moreover, this priority is not affected by the levy on the land of executions issued on the judgments." Citing *Oaks* v. *Kendall*, 23 Cal.App.2d 715 [73 P.2d 1255]. In that case the land was sold under contract with title remaining in the vendor and the court said (pp. 720-721):

"Moreover, the plaintiffs held an express lien on the land by virtue of the contract to sell the real property to secure the payment to them of the unpaid portion of the purchase price of the land (Civ. Code, § 3046; 25 Cal.Jur. 739, §§ 208 and 209), which was prior and superior to any subsequent lien which might be acquired by a judgment creditor of the vendee of the property. (66 C.J. 1245, § 1130; 27 R.C.L. 477, § 192.) In 66 Corpus Juris, *supra*, it is said:

" 'The vendor's lien is superior to the rights of all persons, except *bona fide* purchasers for a valuable consideration without notice, . . . It takes precedence over claims . . . and liens of judgment and attachment creditors of the purchaser, and purchasers at execution sale.'

"In 27 Ruling Case Law, *supra*, it is said:

" 'The judgment or execution lien extends only to the interest of the purchaser and is inferior to the claim of the vendor for the purchase money, and likewise the purchaser at the execution sale will take subject to the rights of the vendor.' "

There was no testimony introduced at the trial on behalf of Transcontinental Credit Service other than the facts which were stipulated to at the pretrial conference. There was no evidence showing that Transcontinental Credit Service extended credit to the Doyles on the assumption or belief that they owned the property involved free of the lien of the Pages or that Transcontinental parted with anything of value so as to constitute it a purchaser or encumbrancer in good faith.

In the pretrial conference order the facts related herein were set forth and were stipulated to between the parties except as to the question whether the lumber company and the Schuts had knowledge of the Page interest at the time their liens attached to the property. The trial was confined to the determination of this issue and the court found that the lumber company had no knowledge, actual or constructive, of the Page lien at the time of the execution, delivery and recording of their trust deed and also found that the Schuts had no knowledge, actual or constructive, of the Page lien when they entered into the agreement on February 11, 1955, with the Doyles to purchase the property. These findings are supported by the record and the facts found by the court support the judgment that the interests of the lumber company and the Schuts are not subject to the Page vendor's lien.

At the trial it was stipulated "that the Lumber Company and Transcontinental Credit are ahead of the plaintiffs" (Bert and Winifred Schut); that "the first interest is that of the Buena Park Lumber Company and the second is that of Transcontinental Credit Service"; and that "the third is Mr. Schut." It was further agreed that the real issue in the trial is whether the judgment lien of the plaintiffs is first or last.

Under the circumstances shown by the record it appears that there is no controversy between (1) the lumber company, (2) Transcontinental Credit Service, (3) the Schuts as to the priority of their liens in this order.

Since we have concluded that the Page vendor's lien was not subject to the lien of Transcontinental Credit Service, the judgment is modified by adding thereto the phrase "subject to the Page vendor's lien" after the word "Service" in the following provision of the judgment: "Second: The interest of defendant Transcontinental Credit Service." As so modified the judgment is affirmed. Each party to pay his own costs on appeal.

Griffin, P. J., and Shepard, J., concurred.

A petition for a rehearing was denied April 15, 1959.