Filed 5/13/16  South v. Barnard Enterprises CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| RONALD SOUTH,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>BARNARD ENTERPRISES, INC.,<br><br>    Defendant and Respondent. | B265401<br><br>(Los Angeles County<br>Super. Ct. No. PD051315) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Susan Lopez-Giss, Judge.  Affirmed in part; vacated in part.

Robert F. Smith for Plaintiff and Appellant.

The Cochran Firm—California and James A. Bryant for Defendant and Respondent.

\* \* \* \* \* \*

Ronald South appeals after a bench trial on his causes of action against Barnard Enterprises, Inc. (Barnard).  South joined Barnard in his marital dissolution action against Pari Garza.  Garza had sold the home where she and South once cohabitated to Barnard.  The trial court determined Barnard rightfully owned the home, located at 11376 Lemoncrest Avenue in Lake View Terrace (the Lemoncrest property).  In a rather unusual disposition, the court entered a judgment dissolving the marriage years ago, and after trial on this matter, "revoked" that judgment and entered a judgment of nullity as well as a judgment on the complaint in favor of Barnard.  We vacate the judgment of nullity but affirm the judgment on the complaint.

## FACTS AND PROCEDURE

### 1.  *Motion to Join Barnard in the Marital Dissolution Action and Stay Eviction*

South filed a petition for dissolution of his marriage to Garza in January 2011.  South's agent personally served Garza in April 2011.  The summons served on Garza (Judicial Council of California form FL-110 [rev. 7/1/09]) contained a section entitled "Standard Family Law Restraining Orders," which stated the parties were restrained from "[t]ransferring, encumbering, hypothecating, concealing, or in any way disposing of any property, real or personal, whether community, quasi-community, or separate, without the written consent of the other party or an order of the court, except in the usual course of business or for the necessities of life . . . ."  (Capitalization omitted.)

South's petition does not list the Lemoncrest property under section 5 of the petition, entitled "Declaration Regarding Community and Quasi-Community Assets and Debts as Currently Known."  (Capitalization omitted.)  Instead, section 5 states:  "Petitioner will amend his petition upon discovery of any and all community and quasi community property."  The petition also does not list the Lemoncrest property in the section for separate property.  The record does not contain an amended petition.

In June 2011, South filed an ex parte motion to join Barnard into the proceedings and to stay eviction proceedings described below.  His sworn declaration with the motion attested to the following facts.

2

The parties married on June 26, 1994, but a valid marriage license never issued. South believed the parties were either "lawful spouses or putative spouses." The parties acquired the Lemoncrest property in 1999. They lived in the house together with their daughter, who was born in 1995. In July 1999, South conveyed the Lemoncrest property to Garza because his health was failing and he wanted the property to be used by Garza and their daughter in the event of his death. Garza promised to hold the property as community property and reconvey it to South if his health improved.

In April 2007, the parties were not getting along, and Garza moved out of the Lemoncrest property. South continued to reside there and still did at the time he filed the petition for dissolution. Garza conveyed the Lemoncrest property to Barnard after South filed the petition for dissolution in January 2011. The owner of Barnard visited the Lemoncrest property during escrow and spoke to South. South told the man that South had resided in the property for over 10 years, the property constituted either community or quasi-community property, the parties were engaged in a pending marital dissolution action, and a standard restraining order prevented Garza from disposing of the property. South believed Barnard paid only $45,000 for the Lemoncrest property, a three-bedroom home worth approximately $394,000.

Barnard filed an unlawful detainer action to evict South from the Lemoncrest property. The unlawful detainer court heard Barnard's motion for summary judgment in June 2011. The court denied the motion as to South and advised him to seek a stay of the unlawful detainer action from the family court. South then filed the ex parte motion to join Barnard and stay the eviction proceedings.

In July 2011, the family court granted South's motion to stay the unlawful detainer action and join Barnard in the marital dissolution proceedings. It entered a temporary restraining order prohibiting South, Garza, and Barnard from disposing of the Lemoncrest property, giving South exclusive temporary possession and control of the property, and staying the eviction proceedings.

## 2. *Complaint Against Barnard and South's Attorney Declaration*

In July 2011, South filed a "complaint on joinder" against Barnard and Garza for declaratory relief, fraud, and constructive trust. The complaint alleged that South and Garza were still married, or at a minimum, were putative spouses. South wanted the court to declare that South owned the Lemoncrest property, Barnard held the property as constructive trustee for the benefit of South, and Barnard had no interest in the property. He also sought an order that Barnard transfer title to him.

South's attorney in the dissolution action, Everardo Vargas Valencia, filed a sworn declaration in March 2012. In pertinent part, he stated as follows. South had been making mortgage payments, improvements, and contributions to the Lemoncrest property with no contributions from Garza. Garza decided to sell the property in February 2011 to William Barnard. Valencia had a telephone conversation with Mr. Barnard in which he advised Mr. Barnard that he would "have problems" with the purchase, given that the parties disputed ownership in the marital dissolution action, and that he should proceed with caution, even if Garza held title solely in her name. Valencia also had a conversation with Mr. Barnard at Valencia's office in which he again advised Mr. Barnard of the dispute over ownership of the Lemoncrest property. Mr. Barnard indicated he would "do what he thought was necessary to acquire the property."

## 3. *Judgment of Dissolution*

In May 2013, the court entered a status only judgment of dissolution of the marriage. The judgment indicated the proceedings were by "[d]efault or uncontested." The judgment reserved jurisdiction over all other remaining issues.

## 4. *Trial on the Barnard Complaint*

The court held a bench trial on the complaint against Barnard on one day in May 2015. The minute order on the date of trial states South was "placed under oath and testifie[d]." The reporter's transcript of the proceedings does not show the clerk placing South under oath, however. The transcript shows the parties' counsel offered arguments,

and the court and counsel asked questions of South and a few of Mr. Barnard. South's responses consisted of the following information.[1]

A minister married South and Garza in 1994 but they never obtained a marriage license. The minister who married South and Garza told them they needed a marriage license, and South "kept insisting" on one, but Garza said she would obtain it. She never did. Later in the proceedings, South testified differently—he said the minister told him he did *not* need a marriage license. Garza was his third wife, and she had previously been married too. South obtained marriage licenses with his first two wives. The judgment of divorce from his second wife was entered in November 1994, months after the marriage ceremony between South and Garza. South appeared at the proceedings when another court ordered the dissolution of his second marriage.

South originally bought the Lemoncrest property in his name and then deeded it to Garza in 1999. While he made Garza the owner of record of the Lemoncrest property, Garza did not contribute any money to the property. He used the proceeds of a settlement to purchase the property. When South conveyed the property to Garza, he intended that she get the property for the benefit of their daughter if he was to die, and he did not intend to give up his interest in the property. He asked Garza to put in writing that she would gift the property to their daughter, but he does not recall if she did this. He lived there for another 15 years and paid the mortgage and property taxes. Mr. Barnard indicated Barnard's purchase of the Lemoncrest property closed on February 28, 2011.

South indicated he wanted to call Attorney Valencia as a witness and "Sherry Sullivan," who was living at the Lemoncrest property when Mr. Barnard visited the property and spoke with South; Sullivan was apparently present during the discussion between the two men. The court declined to let these witnesses testify because it accepted the

---

[1] At one point, during the afternoon session when the court was going over its intended findings and rulings, the court stated that South had "testified . . . under oath" that morning to certain facts.

conversations with Mr. Barnard took place, and those facts would not change its rulings. Garza did not appear at the trial, and South did not argue that he wanted to call her to testify.

The court indicated it was taking judicial notice of its file and of South's testimony. The court found South's testimony was not "persuasive or compelling." The court noted he was married twice before with marriage licenses, and both parties were married to other people at the time of their marriage ceremony. There may have been some sort of understanding or arrangement between the two of them, but in the meantime, South deeded his property of his own free will to Garza. But Barnard would have to compensate South for the payments he had made towards the home since the dispute with Barnard arose. The court asked for proof on the compensation issue. South was not prepared with proof on that issue and the court indicated it would continue for this purpose, saying, ". . . I'm certainly going to make sure that you got compensated for what you did put into this property. [¶] . . . [¶] . . . I am making that commitment to you."

## 5. *Trial Court's Written Ruling*

The court's minute order of the trial date sets forth findings and rulings consistent with the court's oral statements. In the minute order, the court found the parties were never legally married. They did not obtain a marriage license in violation of Family Code provisions. Moreover, they were both married to others at the time of their marriage ceremony, and South's previous marriage was not dissolved until months later, in November 1994. South acknowledged that he had obtained marriage licenses for both of his previous marriages. Garza never filed a response in this action, and South never complied with Code of Civil Procedure sections 585 (judgment on default) and 585.5 (affidavit accompanying application to enter default). The court granted a status only judgment for dissolution in May 2013 without a request for default having been submitted. The court entered its previous status only judgment of dissolution improvidently and in error. There could be no dissolution of a void marriage. A void marriage was invalid for all purposes whether or not declared to be so by a court of law. South's testimony about being a putative spouse was "incredible," given that he had two previous marriages with licenses and was present in court when his second marriage was dissolved in November 1994. The court therefore

6

"revoked" the status only judgment of dissolution and intended to enter a judgment of nullity.

The court further found South transferred his interest in the Lemoncrest property to Garza in July 1999. Barnard purchased the Lemoncrest property in or about January 2011 from Garza. Barnard was a bona fide purchaser that owned the Lemoncrest property. In March 2012, the court had ordered that, pending trial on the complaint against Barnard, South would make all payments on the Lemoncrest property mortgage, property taxes, property insurance, and upkeep. The court ordered the parties to meet and confer to reconcile "what's been paid and what hasn't been paid in regards to" the Lemoncrest property. The court lifted the temporary restraining order issued in July 2011.

The court entered the judgment of nullity on May 11, 2015. South timely appealed from the judgment of nullity. The court did not enter a judgment on the complaint against Barnard and Garza until December 9, 2015, months after South filed his notice of appeal. South did not include the judgment on the complaint in his appendix on appeal, but he included it as an exhibit to a petition for writ of supersedeas (which we denied). We exercise our discretion to treat his notice of appeal as also relating to the December 2015 judgment on the complaint, and moreover, to treat it as filed immediately after entry of the judgment. (Cal. Rules of Court, rule 8.104(d).)[2]

## DISCUSSION

The court did not err in determining Barnard owned the Lemoncrest property by acquiring title through Garza. We address South's several arguments in turn.

---

[2] South has moved to strike Barnard's appendix to its brief, which contains nine documents, because the appendix contains documents that were not part of the record in the trial court. On their faces, these documents do not appear to have been filed in the trial court or admitted as exhibits. (There are no markings demonstrating filing, admission, or receipt by the court.) We grant the motion to strike.

7

## 1. *South's Arguments Relating to the Conduct of Trial*

South contends he was denied a fair trial in that the court decided the case "before the trial had started," his and Mr. Barnard's testimony was unsworn, and the court did not permit him to call any witnesses beyond himself. None of these contentions require reversal.

First, the notion that the court had improperly prejudged the case has no merit. The court had the parties' trial briefs before it (though appellant has not included those briefs in the record on appeal) and had obviously formed a preliminary opinion about which party should prevail based on those briefs and the entire court file. There was nothing improper about that, nor was there anything improper in the court's communicating its thoughts to the parties to help them guide their presentations. The court did display impatience with South's counsel at times and truncated some of his arguments, and some exchanges with counsel were contentious. Ideally, the court would have exhibited more patience and given South more latitude. But these instances did not amount to judicial bias requiring reversal. And to the extent South is accusing the trial court of judicial misconduct, he did not object on this ground in the trial court and thus forfeited the issue. (*Richmond Redevelopment Agency v. Western Title Guaranty Co.* (1975) 48 Cal.App.3d 343, 355 ["As in the case of misconduct of counsel, the claim of misconduct of the court must ordinarily be raised at the trial by objection, assignment as error, or motion for mistrial; otherwise it will be deemed to be waived."].)

Second, South's argument that the court could not rely on his or Mr. Barnard's testimony because the clerk did not place them under oath suffers from several impediments. The minute order of the proceedings stated South at least was placed under oath. Although the reporter's transcript does not show this occurring, the court at one point in the transcript indicated South was under oath. When a conflict exists between the minute order and the reporter's transcript, we will harmonize the two if possible. (*People v. Smith* (1983) 33 Cal.3d 596, 599.) If we find it impossible to harmonize the two, "'that part of the record will prevail, which, because of its origin and nature or otherwise, is entitled to greater credence [citation].'" (*Ibid.*) Which part of the record should prevail depends on the

8

circumstances of each particular case. (*Ibid.*) It is possible the clerk placed South under oath before the reporter started transcribing the proceedings. The court expressed a belief that South was under oath. (See fn. 1, *ante*.) But we will assume solely for the sake of argument that we cannot harmonize the two parts of the record and the clerk did not place South under oath in violation of Evidence Code section 710 (providing "[e]very witness before testifying shall take an oath or make an affirmation or declaration in the form provided by law").

Even so, South has forfeited the argument. (*Smith v. Smith* (1955) 137 Cal.App.2d 512, 515 [holding the appellant could not argue the court erred by taking a witness's testimony without administering the oath because she failed to object on that ground below].) The court could have easily corrected the error had South objected. South points to a moment early in the proceedings when his counsel asked whether the court was treating the proceedings as a mandatory settlement conference, and the court replied, "It's here for trial." The court went on immediately to ask questions directly of South. South cites counsel's question about a mandatory settlement conference as evidence that counsel recognized no witnesses had been sworn. If counsel saw a problem there, he should have objected, and indeed could have objected at any point during the day-long proceedings. He did not. Instead, South relied on his own testimony along with the court to make arguments. "It is too late to raise the point" now. (*Ibid.*; see *Estate of Da Roza* (1947) 82 Cal.App.2d 550, 555-556 ["[T]he record discloses no objection at the hearing on the part of appellant to their testimony on the ground that the witnesses were not sworn. We must presume that appellant failed to object to the evidence on that ground. He thereby waived his objection to the competency of the evidence."].)

Moreover, assuming there was error, South has not demonstrated a reasonable probability that he would have obtained a more favorable result absent the error. (*Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 800.) We would have to assume South would have testified more to his advantage had the clerk placed him under oath, or that he was not telling the truth because he had not taken the oath. South does not argue either of these things. In addition, the sworn declaration he filed with his ex parte motion provided much

of same information he imparted at trial.  We cannot see how the evidence would have changed, had he taken the oath.  As to Mr. Barnard's testimony, it was minimal, and we have not relied on it in our statement of the facts above, except Mr. Barnard's statement that the sale of the Lemoncrest property closed in February 2011.  South does not dispute the truth of this statement.

Third, and last, South has not shown the court committed reversible error in excluding his witnesses, Valencia and Sullivan.  Their information related to conversations Valencia or South had with Mr. Barnard informing him that South disputed Garza's ownership of the Lemoncrest property and contended the property was community or quasi-community property.  The court essentially determined these witnesses' testimony was irrelevant, which the court had broad discretion to determine.  (*People v. Richardson* (2008) 43 Cal.4th 959, 1001.)  Assuming again solely for the sake of argument that the court abused its discretion in excluding these witnesses, South has not demonstrated prejudice.  (*Cassim v. Allstate Ins. Co., supra*, 33 Cal.4th at p. 800.)  The court explained it was accepting as true that these conversations with Mr. Barnard had occurred, and these circumstances would not change its ruling.  We must agree.  The conversations with Mr. Barnard and what he knew about the dispute does not change that Garza had the right to convey the property to Barnard, a ruling with which we find no error, as we explain in part 4.

## 2.  *Res Judicata (Issue Preclusion) Argument*

Citing the principle of res judicata, South argues the court could not enter a new judgment of nullity because the judgment of dissolution was final and, further, the court could not redetermine the issue of the marriage's validity.  We agree the court should not have "revoked" the judgment of dissolution, but that judgment was not res judicata on the issue of the validity of the marriage.  More specifically, the doctrine did not prevent the court from considering the validity of the marriage on the complaint against Barnard and finding on that complaint that South and Garza were never legally married.

The court's only error in this respect was believing it necessary to vacate the judgment of dissolution.  Under Family Code section 2337, the court may sever and grant an

10

early trial on the status of the marriage and enter a status only judgment. (Fam. Code, § 2337, subds. (a), (d), (f).) Such a status only judgment of dissolution is immediately appealable. (*In re Marriage of Van Sickle* (1977) 68 Cal.App.3d 728, 736; *In re Marriage of Fink* (1976) 54 Cal.App.3d 357, 360; see Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2015) ¶¶ 2:62 to 2:63.1, p. 2-45.)

Here, the court entered the judgment of dissolution on May 2, 2013. The court clerk mailed notice of entry of the judgment to South and Garza on the same date. There is no evidence either South and Garza appealed from it or moved to vacate it. It therefore became final and binding on or about 60 days after May 2, 2013, long before trial on the complaint commenced in May 2015. (Cal. Rules of Court, rule 8.104(a); *Guenter v. Lomas & Nettleton Co.* (1983) 140 Cal.App.3d 460, 465.) Barnard contends the court could vacate or set aside the judgment of dissolution at any time under Code of Civil Procedure section 473, subdivision (d) because it was void. Not so here. That statute permits the court on "its own motion" to correct clerical mistakes in its judgments, so as to conform to the judgment the court directed. (Code Civ. Proc., § 473, subd. (d).) Vacating the judgment and entering the judgment of nullity in its place was more than merely correcting a clerical mistake. The court may set aside a void judgment or order only on the "motion of either party after notice to the other party." (*Ibid.*) The parties to the petition for dissolution—South and Garza— did not seek to set aside the judgment of dissolution. Even if South had moved to set it aside, there is no evidence that Garza had notice of such a motion. The court thus erred in vacating or setting aside the judgment of dissolution, and we will direct the court on remand to vacate the judgment of nullity so that the previous judgment of dissolution remains in effect.

Still, the matter of the validity of the marriage was not res judicata as between South and Barnard. These two parties could litigate the issue and the court was free to make a ruling different than the one implicit in the judgment of dissolution. California courts have sometimes used the term "res judicata" as an umbrella term encompassing both claim preclusion and issue preclusion, two separate aspects of an overarching doctrine. (*DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 824.) We are concerned here with issue

11

preclusion, which prohibits the relitigation of issues previously argued and decided. (*Ibid.*) "[I]ssue preclusion applies (1) after final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who was a party in the first suit or one in privity with that party." (*Id.* at p. 825.)

Issue preclusion did not preclude South and Barnard from litigating the validity of the marriage between South and Garza. Barnard, the party against whom South is asserting the doctrine, was not a party to the petition for dissolution. Barnard was not present at the hearing on dissolution, and the court did not serve Barnard with notice of entry of the dissolution judgment. Indeed, Barnard's counsel stated at trial that he was unaware a previous judicial officer had granted a status only judgment of dissolution (to which the court replied: "I appreciate that. Your client wasn't even involved.") What is more, South has not made any reasoned argument that Barnard is a privy of Garza. If Barnard was not a party to the judgment of dissolution nor in privity with a party, the prior judgment did not bind Barnard, and it did not bind the court from making a different determination on the issue.

California Supreme Court authority is consistent with our application of issue preclusion. In *Rediker v. Rediker* (1950) 35 Cal.2d 796, 801, our Supreme Court held that a court's determination of the validity of a previous marriage is not res judicata against strangers to the marriage. "As between strangers or strangers and parties . . . the [divorce] decree is res judicata only in that it conclusively determines that the parties are thereafter free to remarry so far as any relation to each other is concerned. It does not establish the previous validity of their marriage against third persons who were not and had no right to be heard thereon." (*Ibid.*) A void marriage is void from the beginning, and its invalidity may be asserted or shown in any proceeding in which the fact of marriage might be material. (*Lockyer v. City and County of San Francisco* (2004) 33 Cal.4th 1055, 1113, 1114.)

Accordingly, as against Barnard, the court's judgment of dissolution did not conclusively establish the validity of the marriage between South and Garza. The doctrine of res judicata or issue preclusion did not preclude South and Barnard from litigating the

issue on the complaint against Barnard, nor did it preclude the court from determining the marriage between South and Garza was invalid.

### 3. *Putative Spouse Issue*

Besides South's res judicata or issue preclusion argument, South does not truly dispute the court's factual finding that the parties "were never legally married." He does not dispute that they failed to obtain a marriage license. A valid marriage requires, among other things, the issuance and authentication of a marriage license and return of the authenticated license to the county recorder. (*Lockyer v. City and County of San Francisco, supra*, 33 Cal.4th at pp. 1075-1077.) It is also undisputed that South was married to another person at the time of his and Garza's religious ceremony, and he did not obtain a divorce from his second wife until five months later. When one's spouse is living and a court has not dissolved or nullified the marriage before the date of a subsequent marriage, the subsequent marriage is "illegal and void," with two exceptions not applicable here. (Fam. Code, § 2201, subd. (a).) Instead of arguing the parties were legally married in 1999, South contends he was a putative spouse of Garza, and the court erred in finding he was not a putative spouse. We disagree.

When the court determines a marriage is void or voidable, the court may declare a party to be a putative spouse when he or she "believed in good faith that the marriage was valid." (Fam. Code, § 2251, subd. (a).) The good faith inquiry is subjective and evaluates the state of mind of the alleged putative spouse, but the trier of fact may properly consider the reasonableness of the claimed belief as "as part of the totality of the circumstances in determining whether the belief was genuinely and honestly held." (*Ceja v. Rudolph & Sletten, Inc.* (2013) 56 Cal.4th 1113, 1120.) Property that would have been deemed community or quasi-community property had the marriage been valid shall be divided between the parties as if it were community property, upon the putative spouse's request. (§ 2251, subd. (a)(2).) We review a finding that a party is or is not a putative spouse under the substantial evidence standard of review. (*In re Marriage of Guo & Sun* (2010) 186 Cal.App.4th 1491, 1497, disapproved on another ground in *Ceja v. Rudolph & Sletten, Inc., supra*, at pp. 1126, 1128, fn. 12.)

13

Here, substantial evidence supported the finding that South lacked a good faith belief the marriage was valid and therefore he was not a putative spouse. South had been married twice before and obtained marriage licenses for those marriages. He said he relied on Garza to get the marriage license for their marriage, suggesting he knew they needed one, but she never did. He had not obtained a divorce from his second wife when he and Garza were married in June 1994. He appeared at the hearing in November 1994 when the court dissolved his second marriage. The court could reasonably infer from this that South knew he was still married in June when he and Garza had their ceremony. The court found South's testimony that he believed he and Garza were validly married lacking in credibility. We will not disturb this credibility determination on appeal. (*Lenk v. Total-Western, Inc.* (2001) 89 Cal.App.4th 959, 968.)

### 4. *Barnard's Ownership of the Lemoncrest Property*

South contends the trial court erred in declaring Barnard the owner of the Lemoncrest property because (1) even though Garza held title solely in her name, the Lemoncrest property was still community property unless South expressly and in writing renounced his community property rights in the home, pursuant to Family Code section 852; (2) Barnard was not a bona fide purchaser; and (3) Garza conveyed the property in violation of the automatic restraining order that went into effect when he filed his petition. These contentions lack merit.

### a. Family Code Section 852

We begin with the argument based on Family Code section 852. This section relates to interspousal transfers. "Married persons may, through a transfer or an agreement, transmute—that is, change—the character of property from community to separate or from separate to community. (Fam. Code, § 850.) A transmutation of property, however, 'is not valid unless made in writing by an express declaration that is made, joined in, consented to, or accepted by the spouse whose interest in the property is adversely affected.' (*Id.*, § 852, subd. (a).) To satisfy the requirement of an 'express declaration,' a writing signed by the adversely affected spouse must expressly state that the character or ownership of the property at issue is being changed." (*In re Marriage of Valli* (2014) 58 Cal.4th 1396, 1400.)

14

South argues that he did not expressly declare the character of the Lemoncrest property was changing from community property to Garza's separate property, and because it was still community property, Garza had no right to convey it to Barnard without his consent. But this argument presumes South was a putative spouse with a community property interest in the property that survived the transfer to Garza. South was *not* a putative spouse. The requirements of Family Code sections 850 and 852 governing interspousal transfers do not govern the distribution of property acquired during a nonmarital relationship. No community, quasi-community, or quasi-marital property rights accrue during the term of a purely nonmarital cohabitation. (*Marvin v. Marvin* (1976) 18 Cal.3d 660, 665.)

## b. Bona Fide Purchaser

Similarly, South's "bona fide purchaser for value" argument misses the mark. Even though the court found Barnard was a bona fide purchaser, this was not necessary to support the court's ruling that Barnard owned the Lemoncrest property. South does not truly dispute that Garza became the owner of record of the property when he transferred it to her in 1999. "The owner of the legal title to property is presumed to be the owner of the full beneficial title. This presumption may be rebutted only by clear and convincing proof." (Evid. Code, § 662.) Thus, when two parties are in a nonmarital, cohabiting relationship, and one party holds title to their home in her name, she is presumed to be the owner of the property unless her partner demonstrates an agreement to the contrary by clear and convincing evidence. (*Toney v. Nolder* (1985) 173 Cal.App.3d 791, 793, 796; see *In re Marriage of Brooks & Robinson* (2008) 169 Cal.App.4th 176, 185 [the status declared by the instrument through which a party acquired title is controlling, in the absence of a contrary showing by clear and convincing evidence], overruled on another ground by *In re Marriage of Valli, supra*, 58 Cal.4th at p. 1405.) The presumption established by title "cannot be overcome by simply tracing the source of the funds used to purchase the property." (*In re Marriage of Brooks & Robinson, supra*, at p. 190.)

In this case, the court found South deeded the property to Garza of his "own free will" and did not find "compelling" his testimony that she agreed to hold the property for their child. South has not shown the court's finding was unsupported by substantial

evidence. South acknowledged he had no writing memorializing this agreement, and he did not attempt to call Garza to prove an oral agreement. Without more, her selling the property to Barnard would seem to indicate that she did not believe an agreement existed. Further, if he intended to retain control over how the property was used, one wonders why he did not put the property in his and Garza's names as joint tenants, or why he did not ask her to reconvey the property to him when they separated in 2007.

The consequence of the court's findings at trial is that South had no interest in the Lemoncrest property. He had no community or quasi-community property interest in it because he and South were not married, and he was not a putative spouse. Moreover, he had not proven an agreement that she hold the property for their child. If Garza was the owner of full beneficial title to the property, she could sell it to Barnard or whomever she wished.

Because South had no prior interest in the property, it did not matter whether Barnard was a bona fide purchaser. (*In re Marriage of Brooks & Robinson, supra*, 169 Cal.App.4th at pp. 184-185.) The doctrine comes into play when a party has a prior unrecorded interest in property. The purchaser of the property may take the property free and clear of that prior interest when the purchaser pays valuable consideration in good faith and has no knowledge or notice of the prior unrecorded interest. (*Reiner v. Danial* (1989) 211 Cal.App.3d 682, 689.) Such a purchaser is called a bona fide purchaser. The doctrine, however, presupposes the existence of a valid unrecorded interest. The court need not reach the issues (valuable consideration and notice of the prior interest) when no prior interest exists to raise questions about the purchaser's right to title. (*In re Marriage of Brooks & Robinson, supra*, at p. 184; see 4 Miller & Starr, Cal. Real Estate (4th ed. 2015) § 10:50, pp. 10-194 to 10-195 ["[W]hen the prior interest is not enforceable between the parties, it is unenforceable against a subsequent party whether or not the subsequent party is a bona fide purchaser."].) Accordingly, whether Barnard satisfied the elements of a bona fide purchaser was beside the point.

16

### c. The Automatic Restraining Order

Finally, South contends Barnard cannot take the property because Garza conveyed it to Barnard in violation of the automatic restraining order barring her from disposing of any property (Fam. Code, § 2040, subd. (a)(2).)  To begin with, Garza was not constrained by the temporary restraining order when she sold the Lemoncrest property to Barnard.  The sale closed in February 2011.  South served Garza with the petition and summons containing the restraining order in April 2011.  The restraining order did not take effect until "personal service of the petition and summons on the respondent." (*Id.*, § 233, subd. (a).)

More importantly, even if Garza violated the restraining order, we do not see why this requires reversal.  Garza may have sold the property to Barnard in 2011.  But right after that, the court entered an order on South's ex parte motion staying Barnard from taking possession and permitting South to have possession and use of the Lemoncrest property.  Only upon resolving the complaint and determining Barnard owned the property did the court lift that stay.  And its judgment required Barnard to compensate South for the money he had paid towards the property in the interim.  There was no prejudice to South, assuming Garza had violated the restraining order.

## DISPOSITION

The judgment of nullity is vacated.  The judgment of dissolution previously entered on May 2, 2013, shall remain in effect.  The December 9, 2015 judgment on the complaint is affirmed.  Barnard shall recover costs on appeal.


FLIER, J.

WE CONCUR:



BIGELOW, P. J.                    RUBIN, J.


17